UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DENISE N.,[1]

        Plaintiff,

    v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

        Defendant.

Case No. 1:24-cv-6901
Magistrate Judge Norah McCann King

OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Denise N. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

I.     PROCEDURAL HISTORY

On February 14, 2021, Plaintiff filed her application for benefits, alleging that she has been disabled since August 22, 2003. R. 103, 109, 184–88. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

and upon reconsideration. R. 115–18, 120–23. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 124–25. ALJ John Campbell held a hearing on June 26, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 46–96. In a decision dated September 7, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 22, 2003, Plaintiff's alleged disability onset date, through March 31, 2008, the date on which Plaintiff was last insured for Disability Insurance Benefits. R. 24–40. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 1, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 11, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On February 13, 2025, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g) The United States Supreme Court has explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 39 years old on March 31, 2008, the date on which she was last insured for benefits. R. 38. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 22, 2003, her alleged disability onset date, and her date last insured. R. 27.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine, asthma, and headaches were severe impairments. *Id*. The ALJ also found that Plaintiff's fatigue and joint inflammation and pain related to her elevated antinuclear antibody ("ANA") levels were not severe. R. 27–28. The ALJ further found that Plaintiff did not have a medically determinable impairment of obesity during the relevant period. R. 28.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 28–30.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 30–38. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a teacher, secondary school. R. 38.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g*., jobs as a cleaner, housekeeper; a routing clerk; and a collator operator—existed in the national economy and could be performed by Plaintiff with this RFC. R. 38–39. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 22, 2003, her alleged disability onset date, through March 31, 2008, the date on which she was last insured for benefits. R. 39–40.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 5; *Plaintiff's Reply Brief*, ECF No. 8. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 7.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.   John Stambaugh, Jr., M.D., Ph.D.

In a handwritten note dated August 15, 2000, John Stambaugh, Jr., M.D., Ph.D., stated that Plaintiff "[h]as [illegible] due to anti-nuclear antibody disease & should [avoid?] prolonged standing to avoid swelling & pain in the legs." R. 382.

### B.   Steven Meskin, M.D.

Steven Meskin, M.D., Plaintiff's primary care physician, began treating Plaintiff on January 2, 2002. R. 419. On June 23, 2002, Dr. Meskin provided a 12-week work excuse due to severe cervical disease. R. 422. On October 17, 2002, Dr. Meskin stated that Plaintiff was unable to work from September 1998 until September 2000 due to hypertension (post partum); acute stress reaction (post partum) due to illness of newborn; ANA disease; and thrombocytopenia. R. 383. On February 26, 2003, Dr. Meskin stated that Plaintiff suffered from cervical radiculitis and had been unable to work since January 14, 2003. R. 418. In a letter dated May 15, 2003 and addressed to an insurance company, Dr. Meskin stated that Plaintiff "is under treatment for cervical degenerative disc disease with bulging at C3-4. She is permanently disabled and will be unable to return to her teaching duties." R. 700.

On May 20, 2003,[4] Dr. Meskin opined that Plaintiff was totally and permanently disabled and was no longer able to perform her job duties because her work caused severe pain and weakness in her right arm; her symptoms improved with rest, but attempts to return to work had exacerbated her symptoms. R. 390, 982 (duplicate). The doctor further opined that it was unlikely that Plaintiff's condition would improve to a degree that she could perform her job duties. *Id*. On June 11, 2005, Dr. Meskin stated that Plaintiff had been unable to work since April 2, 2002. R. 419.

On May 18, 2021, Dr. Meskin completed a two-page, check-the-box, and fill-in-the-blank "Medical Source Statement of Patient's Ability to Perform Work-Related Physical Activities." R. 694–95 ("May 2021 opinion"). According to Dr. Meskin, Plaintiff could sit, stand, and walk for about 4 hours in an eight-hour work day (and could sit/stand for only 30 minutes at a time). R. 694. Plaintiff would need to take 8 unscheduled breaks due to neck pain. *Id*. She could occasionally lift and carry less than 10 pounds, could not perform fine manipulation with her right hand, could never crawl, climb, or reach above shoulder level, but could occasionally stoop and squat, and could frequently bend. R. 694–95. Plaintiff was mildly restricted in her ability to be around moving machinery, would likely be absent from work about five days per month because of her medical condition or its treatment, and that her symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks during a typical workday. R. 695.

C.    **Amy Colcher, M.D.**

On June 27, 2003, Amy Colcher, M.D., a neurologist, conducted a consultive evaluation of

---

[4] The year of this date is difficult to read and could be 2002 or 2003. *See* R. 390, 982. For ease of reference and without definitively deciding, the Court will refer to this opinion as dated "May 2003."

Plaintiff. R. 425–26. Dr. Colcher noted that Plaintiff had fallen in an elevator in 2001 and had subsequently experienced significant pain in her neck and problems with her right arm and that she had undergone physical therapy, traction, epidurals, pain medication and muscle relaxers "but nothing really helped." R. 425. Upon examination, Dr. Colcher noted

> limited range of motion of the neck. Cranial nerves are intact. There is a slight postural tremor of both arms. There is no drift. There is some weakness. The right opponent polices is three over five. The right triceps has giveaway weakness and the interosseous muscles bilaterally are four over five. Tests of sensation, pinprick, vibration and proprioception are all normal. Deep tendon reflexes are 2+ in the brachioradialis and biceps, absent in the triceps bilaterally, 2+ at the knees and absent at the ankles.

*Id*. Dr. Colcher further noted that a 2002 MRI of the cervical spine had revealed a somewhat left-sided C3-4 disc, but no cord signal change or cord compression; there was also straightening of the normal cervical curve. R. 426. According to Dr. Colcher, Plaintiff had symptoms of C8 radiculopathy, but "[t]here is no imaging to back this up." *Id*. (noting that an EMG to further evaluate this issue would be reasonable). Moreover, Plaintiff's treatment course, consisting of physical therapy and nonnarcotic analgesic medication, was "perfectly appropriate." *Id*.

On August 22, 2003, Dr. Colcher authored the following letter in support of Plaintiff's disability application:

> This letter is to support the disability application of Denise Norton. She is a 35-year-old-woman who has severe chronic right C7 and C8 radiculopathies. These give her incredible neck pain, pain in her right arm, and weakness in her right hand. She is employed as a science teacher and this necessitates her carrying chemicals and writing on the blackboard. She is unable to do this consistently and it would be dangerous for her to continue in her present employment as she cannot rely on her right arm for any physical exertion. She cannot carry. She cannot lift. She cannot write. Her symptoms have been present for the past two years and she is undergoing some therapy. Certainly vocational rehabilitation would be appropriate but in her current capacity as a science teacher there is no way that she can perform the duties of her job. She is disabled from her current job at this point.

R. 701.

10

D.        **Ellen Rader Smith, M.A., O.T.R., C.V.E.**

Ellen Rader Smith, M.A., O.T.R., C.V.E., an occupational therapist, examined Plaintiff on October 21, 2004. R. 436–49. Plaintiff reported that she had been injured in an elevator accident on December 31, 2001. R. 436. Using a 10-point rating scale, Plaintiff reported that her neck pain varied from a "2-3"on a good day to a "10" on bad days. *Id*. Her pain is aggravated by such activities as bending to pick up large toys from the floor, reaching to high kitchen shelves, or repeatedly turning to her right side. *Id*. Ms. Smith noted that Plaintiff kept her shoulders hiked throughout the evaluation, which Plaintiff found helped to relieve neck pain. *Id*. Plaintiff also reported numbness in her right hand and arm, but she described that as "'an annoying sensation that she's gotten used to[.]'" R. 437. Plaintiff reported two to three headaches per week, each lasting from 20 minutes to two hours and, on occasion, several days. *Id*. Although she is independent in her personal care activities, she avoids bending when possible. R. 438–40. Upon physical examination, Ms. Smith noted significant limitations in lifting and carrying, writing, squatting, kneeling, sitting, grasping with the right hand, moving the neck and lower back, and use of hands and grip strength for manipulative tasks. R. 442–49. Ms. Smith concluded as follows:

> The results of the Functional Capacity Evaluation indicate that Ms. N[.]'s restricted neck mobility, on-going pain, right hand and ulnar weakness, reduced coordination, and resultant headaches when the shoulders are relaxed, significantly limit her performance of daily activities. She has had to modify her performance methods for all personal care tasks and needs assistance for nearly all homemaking tasks. She clearly cannot easily move her head freely during object viewing and manipulation, and cannot keep her arm elevated to write on a chalkboard. The deficits that Ms. Norton displayed during this FCE clearly support her doctor's statements *that she cannot resume work as a science teacher that involves regular laboratory assignments in addition to classroom teaching*.

R. 449 (emphasis added).

11

## V.      DISCUSSION

### A.      RFC and Opinion Evidence

As noted above, the ALJ found that Plaintiff has an RFC for a limited range of light work. Plaintiff argues that substantial evidence does not support that RFC determination because the ALJ failed to include limitations from all of her medically determinable impairments and because the ALJ failed to properly consider the opinions of Drs. Meskin and Colcher, and of Ms. Smith.[5] *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 12–27, 30–32; *Plaintiff's Reply Brief*, ECF No. 8, pp. 1–11. For the reasons that follow, this Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the

---

[5] Plaintiff challenges the ALJ's consideration of Ms. Smith's opinion in her challenge to the ALJ's consideration of Plaintiff's subjective complaints, *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 27–32; *Plaintiff's Reply Brief*, ECF No. 8, pp. 10–11, but the Court addresses this challenge along with other opinion evidence and the RFC determination.

discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

> The ALJ determined that Plaintiff had the RFC for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and never climb ladders, ropes, or scaffolds. The claimant could never work at unprotected heights, exposed moving mechanical parts, or with dangerous, heavy machinery, or equipment which cuts, tears, crushes, shears, or punctures in its operations. She could have occasional exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations (SCO) companion to the Dictionary of Occupational Titles (DOT) such as dust, gasses, odors, fumes, pulmonary irritants, poor ventilation, and weather conditions. The claimant could be exposed to a moderate noise level, as defined in the SCO. She could frequently engage in talking. The claimant could frequently handle, finger, and reach with her bilateral upper extremities. She could carry out simple instructions, perform simple, routine tasks, make simple decisions in the workplace, occasionally adjust to changes in workplace routines, frequently maintain contact with supervisors and co-workers, and occasionally maintain contact with the public.

R. 30. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, the 2002 MRI of the cervical spine that showed no cord signal change or cord compression; the generally conservative treatment of Plaintiff's neck impairment; the opinion of Plaintiff's orthopedist that Plaintiff's symptoms relating to her right upper extremity were not of cervical etiology and that longitudinal physical examinations during the relevant period showed no substantial reduction in right upper extremity strength, sensation, or reflexes, but rather showed only giveaway weakness; the fact that, despite blood work that showed elevated ANA levels, Plaintiff's longitudinal physical examinations during the relevant period did not indicate any inflammatory presentation such as joint swelling and Plaintiff was never diagnosed with any specific autoimmune disease; the fact that, during the relevant period, Plaintiff was not prescribed any immunosuppressant; the fact that, although Plaintiff complained at the hearing

that she had substantial fatigue, brain fog, and memory deficits related to an autoimmune deficiency, the medical treatment record did not reflect similar complaints to her treating medical providers during the relevant period; evidence of only mild and intermittent asthma complaints, with no inpatient hospitalizations; and, despite Plaintiff's complaints of headaches, the record contained no evidence of a detailed headache log or diary, or report of accompanying symptoms or complications such as aura, photophobia, nor phonophobia and Plaintiff was not prescribed migraine medication and she reported that she took Motrin to treat her headaches. R. 31–36. The ALJ explained his RFC determination as follows:

> Based on the foregoing, the undersigned finds the claimant had the above residual functional capacity assessment, which was supported by the findings and/or assessments as set forth above from reviewing, examining, and treating providers when considering the claimant's degenerative disc disease of the cervical spine, asthma, and headaches. As detailed above, an April 2002 cervical spine MRI showed disc bulging and a suggested small disc herniation causing mild thecal sac impression, but no cord signal change nor cord compression. In addition, July 2003 electrodiagnostic testing showed between mild and moderately severe cervical radiculopathy. However, the claimant's longitudinal physical examinations by her treating medical providers prior to the date last insured showed largely cervical spasm and reduced range of motion and giveaway weakness of her right upper extremity, but no gross neurological or motor deficit. In considering the foregoing factors, as well as the claimant's asthma and headaches, and in an abundance of caution, accommodating the claimant's subjective allegations of pain, difficulty moving her neck, fatigue, and cognitive deficits, she was limited to performing light exertional work with postural, manipulative, and mental restrictions, as well as restrictions on pulmonary irritants, including weather conditions, and environmental hazards, as set forth above.

R. 37–38. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554.

Plaintiff first complains that, although the ALJ found that her headaches were severe and that she suffered from nonsevere fatigue and joint inflammation related to ANA, the RFC was silent about being off task, absences from work, or reduced ability to perform at production pace. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 16–18; *Plaintiff's Reply Brief*, ECF No. 8, pp.

14

1–3. In support of this challenge, Plaintiff highlights Dr. Meskin's May 2021 opinion that she would be absent from work five days per month and that her symptoms would frequently interfere with her ability to perform even simple tasks; evidence that she missed 65 days of teaching due to her impairments; evidence that, in June 2002, Dr. Meskin had excused her from work for 12 weeks due to severe cervical disc disease; evidence that, in June 2005, Dr. Meskin stated that his patient had not been able to work since April 2, 2002; her report that many of her doctors had told her she was disabled; and her own testimony that she had participated in vocational rehabilitation with a view to engaging in sedentary employment and that, at the time of the hearing, she suffered from headaches two to three times per week, each lasting 20 minutes to two hours and, on occasion, several days. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 17–18 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 8, pp. 1–3. According to Plaintiff, the ALJ's failure to properly consider all severe and nonsevere impairments was harmful error because the vocational expert testified that employers would tolerate being off task only 10% of the working day and only one absence per month. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 18 (citing R. 89).

Plaintiff's arguments are not well taken. First, for the reasons detailed below, the ALJ properly discounted Plaintiff's subjective statements and Dr. Meskin's opinions. Next, although Plaintiff relies on provider statements that she was unable to return to her job during the relevant period, those statements related only to Plaintiff's ability to return to her past work as a science teacher and did not address whether Plaintiff could engage in *any* work. R. 419, 422. Moreover, to the extent that Plaintiff relies on her providers' opinions that she is disabled, that is an issue reserved to the Commissioner. *See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved

for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *cf. Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."). In addition, Plaintiff's reliance on her subjective report of headaches and associated symptoms is unavailing for the reasons already mentioned: there is no detailed headache log or diary, Plaintiff did not report accompanying symptoms or complications such as aura, photophobia, or phonophobia, and she was not prescribed migraine medication but instead relied on only over-the-counter medicine. R. 35. In any event, the ALJ gave Plaintiff "the benefit of the doubt" and crafted an RFC that "contained mental limitations to accommodate these complaints as well as address any effects of the claimant's pain and headaches." R. 35.

Plaintiff next contends that the ALJ erred by crafting an RFC for light work rather than for sedentary (or less than sedentary) work. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 19–20 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 8, p. 4 (citations omitted). In support, Plaintiff relies on her own hearing testimony, the opinions of Dr. Meskin, Ms. Smith, and Dr. Stambaugh, and two pages of medical evidence. *Id*. The Court is not persuaded. As noted above and will be discussed in more detail below, the ALJ properly discounted Plaintiff's subjective statements on the ground that the record did not reflect her subjective complaints during the relevant period at issue, as well as the opinions of Dr. Meskin and Ms. Smith. The ALJ also properly discounted Dr. Stambaugh's opinion that Plaintiff should avoid "prolonged standing" as conclusory, unsupported, and inconsistent with the longitudinal record. R. 36.[6] Although

---

[6] The ALJ explained why he discounted Dr. Stambaugh's opinion, a finding that Plaintiff does not challenge:

Plaintiff also cites to two pages of medical records, that evidence was dated more than a decade after the date on which she was last insured, and there is no indication that this evidence related back to the relevant time period. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 19 (citing, *inter alia*, R. 628 (containing lab results dated June 3, 2019, reflecting, among other things, diffuse ANA pattern, positive ANA titer, and positive ANA test), 1145 (containing ambulatory notes dated September 2, 2021, listing one of her "[p]roblems" as "[e]levated antinuclear (ANA) level")); *Plaintiff's Reply Brief*, ECF No. 8, p. 4 (same).

To the extent that Plaintiff criticizes the hypothetical question posed to the vocational expert on the ground that the hypothetical failed to address all of her impairments or limitations, *Plaintiff's Reply Brief*, ECF No. 8, pp. 4–5, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected

---

> On August 15, 2000, Dr. Stambaugh opined that the claimant should avoid prolonged standing in order to prevent swelling and pain in her legs, due to her anti-nuclear antibody disease (Exhibit 1F, p 1). The undersigned finds this opinion to be unpersuasive, as it is conclusory and he did not cite any physical examination or other clinical findings to support his opined limitation. In addition, this opinion is not consistent with the longitudinal physical examinations during the relevant period by the claimant's other treating medical providers that regularly showed benign examinations of the claimant's lumbar spine and lower extremities (Exhibit 1F, pp 13 & 19 & Exhibit 2F, pp 11 & 21).

*Id*.; *see also Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *cf. Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *1 (3d Cir. June 15, 2023) (concluding that substantial evidence supported the RFC determination and the ALJ's underlying decision to reject some medical opinions because they were "vague" and did not address the claimant's functional abilities in vocational terms), *cert. denied sub nom. Pierznik v. O'Malley*, No. 23-6428, —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2024 WL 899292 (U.S. Mar. 4, 2024); *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record.").

for the reasons previously discussed. In short, this Court is not persuaded that the ALJ erred in crafting an RFC for light exertional work rather than sedentary exertional work.

Plaintiff also argues that the ALJ erred in evaluating the opinions of Drs. Meskin and Colcher. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 20–27; *Plaintiff's Reply Brief*, ECF No. 8, pp. 5–10. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)

---

[7] As previously noted, Plaintiff's claim was filed on February 14, 2021.

or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, and ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout h[is] analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

Turning first to the opinions of Dr. Meskin, the ALJ found at step four of the sequential evaluation process that this physician's May 2003 and May 2021 opinions were "generally unpersuasive[,]" reasoning as follows:

> On May 20, 2003, Steven Meskin, M.D. opined that the claimant was totally and permanently disabled and unable to perform her job duties because work caused her severe neck pain and weakness in her right arm and that her symptoms were improved by rest (Exhibit 14F, p 2). The undersigned finds this opinion to be generally unpersuasive. The undersigned notes that the form that Dr. Meskin completed was submitted to the state treasury, and was mainly geared toward assessing the claimant's ability to resume her public sector job duties, rather than towards assessing general capabilities in the larger world of work, which is somewhat helpful in determining that the claimant could not return to her teaching position. Otherwise, while Dr. Meskin supported his opinion by citing the claimant's April 2002 cervical spine MRI, he did not provide a function-by function assessment of the claimant's ability to perform physical work-related activities (Ibid, pp 1-2). Moreover, Dr. Meskin's opinion was internally inconsistent in that he initially classified the claimant as totally and permanently disabled, but then indicated that her condition was stable and that it was possible, although unlikely, that she would improve (Ibid, p 2). Furthermore, a determination of ability to

perform past work or any other work is reserved to the Commissioner (20 CFR 404.1520b(c)(3)).

R. 36.

> In a May 18, 2021 medical source statement, Dr. Meskin opined that the claimant had a reduced sedentary exertional capacity (Exhibit 7F). The undersigned finds this opinion to be generally unpersuasive, as it is rendered via a check list form with no narrative exposition. In addition, the opinion was dated over 13 years after the date last insured with no indication when the assessed limitations began, as Dr. Meskin did not provide any function by function assessment during the relevant period.

R. 37. The Court finds no error with the ALJ's consideration in this regard. *See Louis*, 808 F. App'x at 118; *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion rendered nearly five years after the date last insured "lacked probative value" because it "shed no light" on the claimant's condition during the relevant period); *Zonak*, 290 F. App'x at 497; *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

However, Plaintiff argues that the ALJ should have "taken into consideration" Dr. Meskin's opined limitations offered after the date last insured, pointing to the fact that Dr. Meskin has treated her since at least January 2002 and has characterized Plaintiff as limited and unable to work for more than 20 years. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 22–24 (citing R. 383, 389–90, 418–19, 422, 694–95, 982); *Plaintiff's Reply Brief*, ECF No. 8, p. 6 (same). This Court disagrees. The ALJ properly noted that an opinion of disability is an issue reserved to the Commissioner. *See Louis*, 808 F. App'x at 118; *Zonak*, 290 F. App'x at 497. Moreover, Dr. Meskin's opinions of June 2002, February 2003, May 2003, and June 2005 pertain only to his patient's ability to perform her prior teaching job and do not relate to whether she could perform any other work. R. 383, 389–90, 418–19, 422, 694–95, 982.

21

Plaintiff next notes that Dr. Meskin's May 2021 opinion did, in fact, provide a function by function assessment of Plaintiff's limitations. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 23 (citing R. 694–95). However, the ALJ criticized the May 2003 opinion for that failure, R. 36, not the May 2021 opinion, R. 37. Rather, the ALJ explained that he discounted the doctor's May 2021 opinion because that opinion was a contained in a check-list format with no narrative explanation, and because the opinion was generated more than 13 years after the date on which Plaintiff was last insured and offered no indication of when the assessed limitations began. R. 37 (noting further that Dr. Meskin did not provide any function by function assessment during the relevant period). The ALJ did not err in this assessment. *See Beety-Monticelli*, 343 F. App'x at 746; *Mason*, 994 F.2d 1065.

Plaintiff also contends that the ALJ should have considered the longevity of Dr. Meskin's treating relationship, arguing that this "entitle[s]" it to "*more* consideration than that of non-treating sources because [he has] reasonable knowledge of the Plaintiff's impairment." *Plaintiff's Memorandum of Law*, ECF No. 5, p. 26 (citing 20 C.F.R. 404.1520c(c)(3)(ii)) (emphasis added). Plaintiff also argues that Dr. Meskin's specialization as a primary care physician puts him "in the best position to opine as to the nature and extent to which the Plaintiff's impairments limit her ability to function." *Id*. (citing 20 C.F.R. § 1520c(c)(4)). Plaintiff is mistaken. As an initial matter, this Court has already explained that the applicable regulation eliminated the hierarchy of medical source opinions that gave preference to treating opinions. 20 C.F.R. § 404.1520c(a). Moreover, the ALJ actually noted this provider's specialty and treatment. R. 33 (noting that Plaintiff's "primary care doctor[,]" *i.e.*, Dr. Meskin, had treated her on June 11, 2004, and citing Exhibit 13F/2, R. 980), 34 (discussing Plaintiff's "primary care visit" on January 13, 2012 and citing Exhibit 7F/5, R. 698, which reflects Dr. Meskin's treatment; noting "periodic primary care

visits between September 2019 and February 2023," and citing, *inter alia*, Exhibit2F/39, 106, 145, 153 which reflect treatment by Dr. Meskin). Moreover, although the current regulation requires an ALJ to articulate how he considered the supportability and consistency of a medical opinion, an ALJ should also *consider*—not necessarily explain—the remaining factors identified in the regulation, including, *inter alia*, the relationship with the claimant and the specialization of the medical source. *See* 20 C.F.R. § 404.1520c(b)(2) (providing that the ALJ "will explain how we considered the supportability and consistency factors" and that the ALJ "may" but is "not required to" explain how the remaining factors were considered), (c)(3)–(4) (providing that the ALJ "will consider" the various factors, including, *inter alia*, the relationship with the claimant and the medical source's specialty). In any event, any failure by the ALJ to expressly discuss these factors does not require remand where, as here, a comprehensive review of the record provides substantial support for the ALJ's evaluation of Dr. Meskin's opinions. *See id*.; *Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL 6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties when he "explained that the treatment records were only partly consistent with and supportive of" the medical opinion because an ALJ "must only explicitly discuss the two most important factors: consistency and supportability").

Turning to Dr. Colcher's opinion, the ALJ explained why he found that opinion partially persuasive:

> On August 22, 2023, Amy Colcher, M.D. opined that the claimant was unable to carry chemicals or write on the blackboard consistently, as she could not rely on her right arm for any physical exertion, and could not lift, carry, or write (Exhibit 9F, p 17). She concluded that the claimant was disabled from her job as a science teacher (Ibid). The undersigned finds this opinion to be partially persuasive. Some limitations on manipulative activities are supported by and consistent with the claimant's July 2003 electrodiagnostic testing that showed chronic cervical radiculopathies (Exhibit 1F, p 15). These are reflected in the limitation in the residual functional capacity assessment to frequent reaching, handling, and fingering with the right upper extremity. However, this opinion is only partially

persuasive, as a complete restriction on lifting, carrying, and writing is extreme and not consistent with the claimant's longitudinal physical examinations by her treating medical providers (including Dr. Colcher's own examination in June 2023) that showed giveaway weakness of the right upper extremity, but no gross neurological deficit, and the finding of the claimant's orthopedist that her right arm symptoms were not of cervical etiology (Ibid, pp 6 & 13 & Exhibit 2F, p 11). Moreover, the claimant acknowledged that her ability to write with her right hand improved somewhat through occupational therapy she had in 2003 and 2004, which was prior to the date last insured (Hearing testimony). In addition, Dr. Colcher only addressed the physical functions involved in the claimant's past relevant work as a science teacher (Exhibit 14F). Furthermore, a determination of ability to perform past work or any other work is reserved to the Commissioner (20 CFR 404.1520b(c)(3)).

R. 36–37. The Court finds no error with the ALJ's consideration in this regard. *See Louis*, 808 F. App'x at 118; *Zonak*, 290 F. App'x at 497; *L. L. Y. v. Comm'r of Soc. Sec. Admin.*, No. CV 22-1710, 2023 WL 1883348, at *4 (D.N.J. Feb. 9, 2023) (finding that the ALJ sufficiently explained why he did not find a medical opinion persuasive where the ALJ considered, *inter alia*, that the claimant's own testimony contradicted such an opinion); *Aponte*, 2021 WL 4963545, at *7.

Plaintiff's attempt to undermine the ALJ's evaluation of this opinion by insisting that this opinion is consistent with Dr. Meskin's opinions, *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 24–25; *Plaintiff's Reply Brief*, ECF No. 8, pp. 7–8, is unavailing. For the reasons already discussed, the ALJ found Dr. Meskin's opinions generally unpersuasive, a conclusion that is supported by substantial evidence. Similarly unavailing is Plaintiff's insistence that Dr. Colcher's long-time relationship with Plaintiff and specialty as a neurologist were factors that required "more consideration" than was due other, non-treating sources. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 26. As this Court has previously explained, the current regulation does not require an ALJ to explain his consideration of these factors. *See* 20 C.F.R. § 404.1520c(b)(2), (c)(3)–(4). Moreover, as he did in his consideration of Dr. Meskin's opinions, the ALJ implicitly considered these factors when he noted, *inter alia*, Plaintiff's neurology treatment, including the

fact that Plaintiff's "neurologist," *i.e.*, Dr. Colcher, prescribed medication and referred Plaintiff to physical and occupational therapy in 2003 and 2004. R. 33 (citing Exhibit 2F/11, R. 425, reflecting Dr. Colcher's neurologic consult dated June 27, 2003; Exhibit 2F/9–10, R. 423–24, reflecting Dr. Colcher's referrals to occupational and physical therapy dated August 22, 2003, as well as a prescription for a cervical traction kit dated March 24, 2004).

Plaintiff goes on to argue that "[i]t is clear from Dr. Colcher's opinion that Plaintiff would not be able to lift her dominant hand frequently according to the Social Security Administration definition." *Plaintiff's Memorandum of Law*, ECF No. 5, p. 25 (citing R. 30; SSR 83-10 that defines "frequent" as occurring from one-third to two-thirds of the time). Plaintiff contends that the ALJ's failure in this regard is harmful error because the vocational expert testified that a limitation to only occasional handling, fingering, and reaching would eliminate unskilled work. *Id*. (citing R. 88).

Plaintiff's argument is not well taken. The Court finds no ambiguity in the ALJ's finding that Dr. Colcher's opinion was only "partially persuasive", or in the ALJ's RFC determination. As detailed above, the ALJ found that "[s]ome limitations on manipulative activities are supported by and consistent with" the evidence, but explained that this opinion was "only partially persuasive" because "a complete restriction on lifting, carrying, and writing is extreme and not consistent with the claimant's longitudinal physical examinations" and with Plaintiff's own acknowledgment that "her ability to write with her right hand improved somewhat through occupational therapy she had in 2003 and 2004, which was prior to the date last insured[.]" R. 37. Although the ALJ found that Dr. Colcher's opined total restriction on manipulative activities was not persuasive, he agreed that some such limitations were warranted, and limitations are in fact reflected in the RFC's limitation to only frequent reaching, handling, and fingering.

25

Accordingly, the Court finds no error in the ALJ's discussion and findings regarding Dr. Colcher's opinion.

The ALJ also considered Ms. Smith's functional capacity evaluation when crafting the RFC determination:

> At an October 21, 2014 independent medical examination (IME) by Ellen Rader Smith, an occupational therapist, the claimant reported that she had numbness in her right hand and arm, but described it as "an annoying sensation that she's gotten used to" (Exhibit 2F, p 23). She further reported two to three headaches per week lasting in duration between 20 minutes to two hours and, on occasion, for several days (Ibid, p 23). Her physical examination indicated significant limitations in writing, squatting, kneeling, sitting, grasping with her right hand, moving her neck and lower back, and light lifting and carrying (Ibid, pp 28-33). However, the undersigned notes that an occupational therapist is not an acceptable medical source under the regulations and Ms. Smith's extreme findings were not consistent with the more benign physical examination findings by the claimant's treating medical providers (20 CFR 404.1502; Exhibit 1F, pp 6, 13, & 19 & Exhibit 2F, pp 11, 13, 17-18, & 21). Moreover, in assessing the claimant, Ms. Smith extensively cited and incorporated the claimant's subjective allegations of symptoms and extensive physical functional limitations (Exhibit 2F, pp 22-27 & 29-30).

R. 33. Plaintiff complains that the ALJ erred in considering this evaluation and opinion. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 30–32; *Plaintiff's Reply Brief*, ECF No. 8, pp. 10–11. Plaintiff specifically contends that the ALJ failed to properly consider the factors required by 20 C.F.R. § 404.1520c and that the ALJ "barely" mentioned the therapist's findings and treating records. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 30; *see also id*. at 31–32 (detailing Ms. Smith's findings and opined limitations). In pursuing this challenge, Plaintiff observes that SSR 16-3p and 20 C.F.R. § 404.1513(a)(4) acknowledge the probative value of non-acceptable medical sources such as this therapist. *Plaintiff's Reply Brief*, ECF No. 8, p. 10. According to Plaintiff, Ms. Smith's opinion supports "limitations that the Plaintiff would not be able to sustain any physical function for time periods consistent with regular and continuing work." *Id*. at 10–11. Plaintiff's arguments are not well taken.

It is true that, for claims filed on or after March 27, 2017, an ALJ must consider a medical opinion given by a medical source, even if that source is not an acceptable medical source. *See* 20 C.F.R. § 404.1520c. However, even assuming that the ALJ discounted, in part, Ms. Smith's opinion because she was not an acceptable medical source, he also gave other reasons for discounting that opinion. R. 33. Importantly, although the ALJ did not specifically cite to § 404.1520c, nor did he specifically use the word "persuasive," the ALJ in fact evaluated Ms. Smith's opinion consistent with the applicable regulation. *Id*. The ALJ explained that Ms. Smith's "extreme findings were not consistent with the more benign physical examination findings" in the record. *Id*. (citations omitted); 20 C.F.R. § 404.1520c(c)(2); *Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 284–85 (M.D. Pa. 2022) (concluding that "[t]he ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence" where the ALJ found, *inter alia*, that a medical opinion was "not persuasive because it was inconsistent with the physical examination findings of record as well as her own examinations"). The ALJ also implicitly addressed the supportability of Ms. Smith's opinion in noting that she "extensively cited and incorporated the claimant's subjective allegations of symptoms and extensive physical functional limitations[.]" R. 33 (citations omitted; *see also Chung v. Comm'r of Soc. Sec.*, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025) ("[A]n ALJ need not reiterate the magic words 'support' and 'consistent' for each doctor,' so long as the ALJ weave[s] supportability and consistency throughout [the judge's] analysis of which doctors were persuasive.") (cleaned up); *Alfred W. v. Comm'r of Soc. Sec.*, No. 24-CV-08486, 2025 WL 2304760, at *8 (D.N.J. Aug. 11, 2025) ("[T]he ALJ sufficiently articulated the basis for finding Dr. Cornejo's opinion only partially persuasive—citing its vagueness, *reliance on subjective complaints*, and lack of supporting medical evidence.") (emphasis added); *Hammer*

27

*v. Comm'r of Soc. Sec.*, No. 3:21-CV-00616, 2022 WL 5250280, at *6 (M.D. Pa. Oct. 6, 2022) (finding that the ALJ properly considered the medical evidence and supportability of an opinion where the ALJ explained that an opinion was, *inter alia*, "not supported by her findings" where it "was based mostly on subjective complaints of the claimant and his pain behavior rather than the objective findings on the examination the medical evidence"). For the reasons discussed in more detail below, the ALJ properly discounted Plaintiff's subjective complaints. Accordingly, the Court is not persuaded that the ALJ erred in his consideration of Ms. Smith's opinion.

In continuing to challenge the RFC, Plaintiff contends that the RFC is also "silent with respect to any limitation in neck rotation despite ample evidence demonstrating the need for same, but the VE testified that there would be no jobs available if a person can only occasionally engage in neck rotation. (R. 88)." *Plaintiff's Memorandum of Law*, ECF No. 5, p. 25; *Plaintiff's Reply Brief*, ECF No. 8, p. 8 (same). The Court is not persuaded that this issue requires remand. As previously noted, the ALJ considered that Plaintiff received generally conservative treatment for her neck impairment, consisting of physical and occupational therapy, a home exercise program, non-narcotic anti-inflammatory medication, muscle relaxers, and injections. R. 35; *see also* 20 C.F.R. § 404.1520c(c)(3)(iv) (providing that, when considering a medical opinion, an ALJ may consider "[t]he kinds and extent of examinations and testing the medical source has performed or ordered"); *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245–46 (3d Cir. 2020) (characterizing injections as "relatively routine and conservative treatment"); *Myers v. Comm'r of Soc. Sec.*, 684 F. App'x 186, 192 (3d Cir. 2017) (affirming the ALJ's finding that a physician's opinion that the claimant had a disability was unpersuasive given that "the treatment itself was conservative, medication lessened symptoms, and the treatment notes do not support the severity indicated in [that opinion]"); *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164

28

(3d Cir. 2008) (finding that substantial evidence supported the ALJ's conclusion that a claimant was not disabled in light of her conservative treatment, lack of hospitalization, and ability to perform household chores and daily life activities); *Irwin v. Comm'r of Soc. Sec.*, No. CV 19-5109, 2020 WL 1888958, at *1 (E.D. Pa. Apr. 16, 2020) (finding that the ALJ "reasonably described" the claimant's "left knee treatment [which included physical therapy] as 'routine and conservative' "); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy"); *cf. Chung*, 2025 WL 1065241, at *5 (finding that the ALJ did not form a speculative lay opinion about the claimant's response to treatment where the ALJ observed the contrast between the physician's "opinion of complete disability and the comparatively 'conservative' treatment she had recommended"). The record further reflected Plaintiff's reports that her neck symptoms improved with physical therapy. R. 34; *cf. L. L. Y. v. Comm'r of Soc. Sec. Admin.*, No. CV 22-1710, 2023 WL 1883348, at *4 (D.N.J. Feb. 9, 2023) (finding that the ALJ sufficiently explained why he did not find a medical opinion persuasive where the ALJ considered, *inter alia*, that the claimant's own testimony contradicted such an opinion). Moreover, the ALJ explained that he accommodated Plaintiff's complaints of neck pain in the RFC through light exertional work and through the specific postural and manipulative restrictions. R. 38.

Significantly, although Plaintiff insists that there is "ample evidence" demonstrating "the need for" additional limitation in neck rotation, she neither identifies that evidence nor explains what that additional limitation should be. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 25; *Plaintiff's Reply Brief*, ECF No. 8, p. 8. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the

29

'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Plaintiff therefore has not persuaded this Court that the ALJ erred in failing to impose greater manipulative or neck restrictions in the RFC.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Drs. Meskin and Colcher, and Ms. Smith.

## B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 27–32; *Plaintiff's Reply Brief*, ECF No. 8, pp. 10–11.

Before considering the merits of Plaintiff's challenge, the Court addresses the Commissioner's argument that portions of Plaintiff's arguments in this regard—as well as the entirety of her arguments relating to her challenge at step five in her opening brief—exceed the page limit of District of New Jersey Local Rule 7.02(d), which limits briefs to 30 pages if using a 12-point font. *Defendant's Brief*, ECF No. 7, pp. 19 n.6, 21 n.7. The Commissioner contends that there is no indication that Plaintiff sought—or was granted—leave to exceed this page limitation. *Id.*(stating further that he responds to Plaintiff's arguments on the excess pages only in the event that the Court considers these arguments). Plaintiff disagrees with the Commissioner's argument,

30

taking the position that the District's Local Civil Rule 7.02(b) limits briefs to 40 pages and, therefore, "it is unclear why Plaintiff would need to ask for permission to exceed the page limit" where her opening brief is only 37 pages." *Plaintiff's Reply Brief*, ECF No. 8, p. 10 n.2.

Local Rule 7.02 provides, in relevant part, as follows:

(b) Any brief shall include a table of contents and a table of authorities and *shall not exceed 40 ordinary typed or printed pages* (15 pages for any reply brief submitted under L.Civ.R. 7.1(d)(3) and any brief in support of or in opposition to a motion for reconsideration submitted under L.Civ.R. 7.1(i)), excluding pages required for the table of contents and authorities. Briefs of greater length will only be accepted if special permission of the Judge is obtained prior to submission of the brief. . . .

(d) Each page of a brief shall contain double-spaced text and/or single-spaced footnotes or inserts. *Typeface shall be in 12-point non-proportional font (such as Courier New 12) or an equivalent 14-point proportional font (such as Times New Roman 14). If a 12-point proportional font is used instead, the page limits shall be reduced by 25 percent (e.g., the 40 page limit becomes 30 pages in this font* and the 15 page limit becomes 11.25 pages). Footnotes shall be printed in the same size of type utilized in the text.

D. N.J. L. Civ. R. 7.02(b), (d) (amended Dec. 22, 1999; Apr. 19, 2000; Dec. 13, 2007; June 19, 2013) (emphasis added).

In this case, Plaintiff's double-spaced, 37-page, opening brief appears to be written in 12-point Times New Roman font. *See Plaintiff's Memorandum of Law*, ECF No. 5. Therefore, Plaintiff's opening brief was limited to a maximum length of 30 pages. D. N.J. L. Civ. R. 7.02(d). As the Commissioner notes, and as Plaintiff concedes, Plaintiff did not seek leave to file a brief in excess of 30 pages prior to filing her initial brief, nor has she sought leave to file the brief *nunc pro tunc*. However, under the circumstances of this particular case—where the Commissioner has responded substantively to Plaintiff's arguments appearing in the excess pages—the Court concludes that the interests of efficiency and resolution of the merits of claims, the Court will consider all of Plaintiff's substantive challenges. *Cf. Ingram v. Cnty. of Camden*,

31

No. CV 14-5519 (JBS-KMW), 2018 WL 6011866, at *2 (D.N.J. Nov. 16, 2018) (finding that the

defendants exceeded, without authorization, the page limitation provided in Local Rule 7.02(d),

but that "in light of the complexity of the motion, the Court finds that permitting consideration of

the brief is the most efficient and appropriate course of action at this time, and therefore the

Court shall consider Moving Defendants' overlength brief").

Turning to the merits of Plaintiff's challenge to the ALJ's evaluation of Plaintiff's

subjective complaints, "[s]ubjective allegations of pain or other symptoms cannot alone establish

a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20

C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's

subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008)

(citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in

evaluating a claimant's subjective complaints. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL

5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically

determinable physical or mental impairment(s) that could reasonably be expected to produce an

individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms is

established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine

the extent to which the symptoms limit an individual's ability to perform work-related

activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of

the intensity and persistence of the pain or symptom and the extent to which it affects the ability

to work] obviously requires the ALJ to determine the extent to which a claimant is accurately

stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. §

404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical

evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. §

404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration,

frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the

type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate

pain or other symptoms; treatment, other than medication, currently received or have received

for relief of pain or other symptoms; any measures currently used or have used to relieve pain or

other symptoms; and other factors concerning your functional limitations and restrictions due to

pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective

complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them

where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134

(citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d

Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as

there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered

Plaintiff's subjective complaints. R. 34–35, 37–38. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's

statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." R. 34. As previously discussed, the ALJ detailed years of medical

evidence and record testimony to support his findings, including Plaintiff's conservative

treatment and generally unremarkable physical examination findings. R. 31–38. The ALJ also

explained how he specifically considered Plaintiff's subjective complaints when crafting the

RFC:

Based on the foregoing, the undersigned finds the claimant had the above residual functional capacity assessment, which was supported by the findings and/or assessments as set forth above from reviewing, examining, and treating providers when considering the claimant's degenerative disc disease of the cervical spine, asthma, and headaches. As detailed above, an April 2002 cervical spine MRI showed disc bulging and a suggested small disc herniation causing mild thecal sac impression, but no cord signal change nor cord compression. In addition, July 2003 electrodiagnostic testing showed between mild and moderately severe cervical radiculopathy. However, the claimant's longitudinal physical examinations by her treating medical providers prior to the date last insured showed largely cervical spasm and reduced range of motion and giveaway weakness of her right upper extremity, but no gross neurological or motor deficit. In considering the foregoing factors, as well as the claimant's asthma and headaches, and in an abundance of caution, accommodating the claimant's subjective allegations of pain, difficulty moving her neck, fatigue, and cognitive deficits, she was limited to performing light exertional work with postural, manipulative, and mental restrictions, as well as restrictions on pulmonary irritants, including weather conditions, and environmental hazards, as set forth above.

R. 37–38. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; *cf. Sudler*, 827 F. App'x 245-46 ("[A] modest treatment plan and . . . failure to comply with recommended pain management techniques can provide substantial evidence for [an] ALJ's decision to not fully credit" a claimant's testimony about the extent of her symptoms.") (cleaned up).

However, Plaintiff, relying primarily on her own hearing testimony and subjective complaints to providers, argues that the record supports her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 29–30 (citations omitted). Plaintiff's argument is not well taken. First, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton*, 131 F. App'x at 879 ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v.*

34

*Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted). Moreover, Plaintiff's circular argument simply relies on her subjective complaints, which this Court has already explained are not fully supported by or consistent with the record. *See Brickner v. Colvin*, No. 3:14-CV-02462-GBC, 2016 WL 1253493, at *7 (M.D. Pa. Mar. 31, 2016) ("This is a circular argument. Plaintiff's self-reported side effects, pain, and need for rest are evidenced only by her subjective complaints, which the ALJ found to be less than fully credible.").

Plaintiff goes on to insist that, beyond her subjective statements and testimony, "the record reflects that her cervical spine bulging discs caused mild to moderate limitations with movement of the neck and radiculopathy that hindered complete right-hand movement which lends credence to Plaintiff's testimony supporting further limitations of her right hand. (R. 401, Pl. Br., p. 29-30)." *Plaintiff's Reply Brief*, ECF No. 8, p. 10. Plaintiff therefore argues that the ALJ engaged in impermissible cherry picking the evidence to support his findings. *Id*. This Court disagrees. The evidence from December 2004, upon which Plaintiff relies, stated that Plaintiff's "headaches and radiculopathy *hinder complete* right hand movement." R. 401 (emphasis added). This notation cannot be read as indicating that Plaintiff was totally unable to use her right hand; complete mobility was merely "hinder[ed.]" *Id*. Moreover, the ALJ crafted an RFC that limited Plaintiff to frequent handling, fingering, and reaching. R. 30. To the extent that Plaintiff suggests that the evidence requires a greater limitation, Plaintiff's suggestion is entirely speculative and boils down to simply a disagreement with the ALJ—who has the duty to craft the RFC—and whose determination the Court has already found is supported by substantial evidence. *See Chandler*, 667 F.3d at 361; *Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003)

35

("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose her–or this Court's–own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in evaluating Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

### C.  Step Five

Finally, Plaintiff argues that the ALJ failed to carry the Agency's burden at step five. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 32–36; *Plaintiff's Reply Brief*, ECF No. 8, pp. 11–13. Plaintiff's arguments are not well taken.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether

other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT [Dictionary of Occupational Titles]." *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)); *see also Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002) (explaining that the DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether any jobs exist that a claimant can perform"). Before relying on vocational expert testimony, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles[.]" SSR 00-4p, 2000 WL 1898704, at *1.

In this case, a vocational expert testified at the administrative hearing. R. 82–92. The ALJ posed a hypothetical to the vocational expert that assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 85–86. The vocational expert responded that the jobs of cleaner, housekeeping; routing clerk; and collator operator could be performed by such an individual. R. 86–87. The vocational expert went on to state that his testimony was consistent with the DOT and companion publications with the exception of off task, absenteeism, sit/stand option, neck rotation, and some of the social interaction, all of which are not specified in the DOT and were therefore based on the vocational expert's professional experience. R. 89–90. In concluding at step five that Plaintiff was not disabled, the ALJ relied on that testimony and found that a significant number of jobs existed in the national economy that Plaintiff could perform

despite her reduced RFC, including such representative occupations as cleaner, housekeeper (unskilled, SVP 2); routing clerk (unskilled SVP 2); and collator operator (unskilled, SVP 2). R. 38–40.

In challenging the ALJ's finding at step five, Plaintiff first argues that the DOT is outdated—which the ALJ acknowledged—and "the record does not contain information regarding whether these occupations are performed with more modern tools or processes and whether there is an apparent conflict." *Plaintiff's Memorandum of Law*, ECF No. 5, p. 24; *see also Plaintiff's Reply Brief*, ECF No. 8, p. 11. Thus, Plaintiff argues, "further vocational expert evidence is warranted." *Plaintiff's Memorandum of Law*, ECF No. 5, p. 24. This Court disagrees. "'[T]he Code of Federal Regulations specifically lists the DOT as a source of 'reliable job information[.]'" *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 497 (D.N.J. 2022) (quoting *Hearn v. Comm'r of Soc. Sec.*, No. CV 18-10538, 2019 WL 2710790, at *7 (D.N.J. June 27, 2019) (internal quotation marks and citations omitted)). "Although Plaintiff may disagree with the relevance of the Dictionary of Occupational Titles ("DOT") in the modern-day work force, 'the DOT remains an appropriate source of occupational data.'" *Sanabria v. Comm'r of Soc. Sec.*, No. 2:15-CV-8963, 2017 WL 436253, at *4 (D.N.J. Jan. 31, 2017) (quoting *Coates v. Colvin*, No. CIVA. 14-0265, 2014 WL 4792199, at *4 (W.D. Pa. Sept. 24, 2014)); *see also Rush v. Berryhill*, Civ. No. 17-939, 2018 WL 4257930, at *1 n.1 (W.D. Pa. Sept. 6, 2018) ("[C]ourts in the Third Circuit that have addressed the matter have continued to find the DOT to be an appropriate source of occupational information and have declined to require ALJs and VEs to consult other sources in addition to the DOT.") (citations omitted); *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 1:16-CV-05691-NLH, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017) ("It is not for this Court

38

to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC.").

As detailed above, the vocational expert and the ALJ reasonably relied on the DOT regarding the existence of jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 38–39, 89–90. "Given that [a] vocational expert may rely on the DOT, and the ALJ may rely on the [vocational expert's] testimony to the extent it is consistent with the DOT, Plaintiff's argument fails." *Scott R.*, 643 F. Supp. 3d at 498 (cleaned up).

Plaintiff, relying in part on vocational expert testimony, next contends that the DOT descriptions of the jobs routing clerk and collator operator conflict with and exceed the RFC for carrying out simple instructions and performing simple, routine tasks because they involve a reasoning level of 2. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 34; *Plaintiff's Reply Brief*, ECF No. 8, p. 12. The Court is not persuaded this issue requires remand. By way of background, "[t]he qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id.* "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id.* (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete

39

variables in or from standardized situations." *Id*. Reasoning level 3 applies "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" in "problems involving several concrete variables in or from standardized situations." *Id*. "SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id*. (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)−(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id*. at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

Here, even if the Court were to accept, for present purposes only, that the jobs of routing clerk and collator operator were unavailable to Plaintiff, "the ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy." *Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *2 (3d Cir. June 15, 2023), *cert. denied sub nom. Pierznik v. O'Malley*, No. 23-6428, —— U.S. ——, —— S.Ct. —— —, —— L.Ed.2d ——, 2024 WL 899292 (U.S. Mar. 4, 2024). As detailed above, the vocational expert testified that a hypothetical person with Plaintiff's vocational profile and the RFC

40

ultimately found by the ALJ could also perform the job of cleaner, housekeeping, of which there are approximately 177,000 jobs in the national economy. R. 30, 85–86. This job is unskilled with a GED reasoning level 1 and SVP  level 2. *Id*.; *see also* DICOT 323.687-014. Because Plaintiff can perform at least one job that exists in significant numbers in the national economy, the Court is not persuaded that the Commissioner failed to carry his burden at step five, or that this issue otherwise requires remand. *See Pierznik*, 2023 WL 4014468, at *2; *see also Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act.") (citing 20 C.F.R. § 404.1566).

In continuing to challenge the ALJ's determination at step five, Plaintiff argues that the RFC limitations to frequent interaction with supervisors and co-workers and occasional interaction with the public exceed the social interaction requirements for all three jobs identified by the vocational expert. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 35–36; *see also Plaintiff's Reply Brief*, ECF No. 8, pp. 12–13. Plaintiff specifically argues that O*Net data reflects that the jobs of cleaner, housekeeper; routing clerk; and collator operator require greater social interaction than that permitted in the RFC. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 35 (citations omitted).

Plaintiff's argument is not well taken. As already discussed, occupational evidence provided by a vocational expert generally must be consistent with the DOT and, before relying on the testimony of a vocational expert, an ALJ must identify and resolve any conflict between that expert's testimony and the DOT. *Zirnsak*, 777 F.3d at 617; SSR 00-4p, 2000 WL 1898704, at *1. Notably, "nothing requires ALJ's to resolve such conflicts [with O*Net] because the DOT—not O*Net—is the authoritative source in this area." *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 496 n.4 (D.N.J. 2022) (citing *Everingham v. Comm'r of Soc. Sec.*, No. 17-12249, 2018 WL

6322620, at *9 (D.N.J. Dec. 18, 2018) (rejecting similar arguments regarding another third-party online resource)); *see also* SSR 00-4p (advising that, before relying on vocational expert testimony, adjudicators must "[i]dentify and obtain a reasonable explanation for *any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT)*, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)" and explain how any identified conflict was resolved) (emphasis added); *Nicky N. v. Comm'r of Soc. Sec.*, No. CV 23-3440 (SDW), 2024 WL 1526122, at *8 (D.N.J. Apr. 9, 2024) ("Plaintiff's reliance on 'O*NET' is misplaced. *ALJs and VEs may rely on the DOT data even where it conflicts with O*NET, . . . and that is what the ALJ did here.*") (citations omitted) (emphasis added); *Evans v. Comm'r of Soc. Sec.*, No. 4:21-CV-00841, 2022 WL 4357470, at *10 (M.D. Pa. Sept. 20, 2022) ("Here, it seems Plaintiff is conflating the DOT with O*NET and the Occupational Requirements Survey. In other words, Plaintiff is confusing the requirement that the ALJ ask the vocational expert to reasonably explain the ways the VE's testimony conflicts with the DOT with a requirement that the ALJ ask the vocational expert to explain all conflicts in the VE's testimony, which is not a requirement in the Third Circuit.") (citations omitted); *Junod v. Berryhill*, No. CV 17-1498, 2018 WL 5792214, at *3–5 (W.D. Pa. Nov. 5, 2018) ("'Thus, even if the VE's testimony was in conflict with O*NET, . . . there is no requirement that the VE's testimony comply with that database.'") (quoting *Malfer v. Colvin*, Civ. No. 12-169J, 2013 WL 5375775, at *5(W.D. Pa. Sept. 24, 2013)).

Here, as discussed above, the vocational expert testified that his testimony was consistent with the DOT and, to the extent that he discussed other restrictions that were outside of the DOT, he testified that his testimony was based on his professional experience as a vocational expert. R.

89–90. Under these circumstances, Plaintiff has not persuaded the Court that any alleged conflict between the RFC/vocational testimony and the O*Net requires remand. *See Zirnsak*, 777 F.3d at 617 ("As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT."); *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience).

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation process and concludes that substantial evidence supports the ALJ's determination in this regard.

## VI.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 6, 2026                                    *s/Norah McCann King*
                                                      NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE